IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL MFG. CO., STEALTH INDUSTRIES, INC., and LEO STOLLER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 04 C 3049 |
| GEORGE BRETT and BRETT BROTHERS SPORTS INTERNATIONAL, INC., | ) ) ) ) | HONORABLE DAVID H. COAR |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Central Mfg. Co., Stealth Industries, Inc., and Leo Stoller (collectively referred to as "Central Mfg. Co.") brought an action for trademark infringement, false designation of origin, and unfair trade practices under state and federal law against defendants George Brett and Brett Brothers Sports International, Inc ("Brett Bros."). The parties filed cross motions for summary judgment, and on September 30, 2005, this Court issued an opinion granting judgment to Brett Bros. on all claims, cancelling Plaintiff's trademark registration, and awarding attorneys' fees and costs to Defendants. Before this Court is Plaintiffs' motion for reconsideration.

With each additional filing, the nature of this case becomes more confused rather than less. Examples of irregular behavior on plaintiffs' part abound. Judge Lindberg's opinion in *Central Mfg. Co. v. Pure Fishing, Inc., et al.*, No. 05 C 0725, noted that Plaintiffs admitted that Central Mfg. Co. was a business name for Central Mfg. Inc., a Delaware corporation. *Pure*

*Fishing, Inc.*, No. 05 C 0725, Mem. Op. at 2 (N.D. Ill. Nov. 16, 2005). On January 26, 2006, this Court directed the Plaintiffs to file a supplemental jurisdictional statement setting forth the grounds on which Central Mfg. Co. had standing to bring the Complaint.

The original complaint was brought on behalf of "Stealth Industries, Inc., a corporation," and made no mention of either Central Mfg. Co. or Leo Stoller. Stealth Industries was described as a corporation with its principal place of business in Chicago, Illinois. Sometime after August 14, 2004, Plaintiff amended his complaint. This amended complaint was never properly filed and docketed with this Court and is accessible only as an attachment to subsequent filings. It is not this Court's responsibility to ensure that parties properly file pleadings; that is up to the parties. The amended complaint listed as plaintiffs: "Central Mfg. Co., a Delaware corporation, Stealth Industries, Inc., a Delaware corporation, and Leo Stoller." Upon closer inspection, additional problems arise. Central Mfg. Co. is not a Delaware corporation. Indeed, Central Mfg. Co. is not an independent corporate entity at all, but rather an assumed name or d/b/a for Central Mfg. Inc., a Delaware corporation. *See Pure Fishing, Inc.*, No. 05 C 2052, mem. op. at 2, 5 (N.D. Ill. Nov. 16, 2005). But Central Mfg. Inc. is not and never was named in the instant litigation, despite multiple amendments to the parties named in the complaint. This was not a pro se complaint.

The two corporate plaintiffs have been represented by counsel throughout the litigation,[1] as they must be.

Contrary to the statements in Central Mfg. Co.'s amended complaints, it is not an independent legal entity and it is not incorporated under Delaware law. Stoller, however, has registered "Central Mfg. Co. of Illinois" as an assumed name for "Central Mfg. Inc." with the Illinois Secretary of State. But again, Stoller proceeded by setting the proverbial cart before the horse. Even a cursory comparison of the complaint with the Illinois Secretary of State's "Real Time Corporate/LLC Database" discloses that Stoller did not register Central Mfg. Co. or Central Mfg. Inc. as foreign corporations in Illinois until July 11, 2005–over fourteen months after filing the complaint at bar. In addition, the Secretary of State's database reveals that Stealth Industries, Inc. is not currently registered in Illinois at all.[2] Accordingly, this Court directed Plaintiffs to file a statement setting forth the basis, if any, on which they, and in particular,

---

[1] Robert N. Weiner filed an attorney appearance on behalf of Stealth Industries along with the initial Complaint. Attorney Weiner signed the amended complaint, adding Central Mfg. Co. and Leo Stoller as plaintiffs. In addition, Weiner appeared on behalf of both corporate plaintiffs. Leo Stoller filed a *pro se* appearance with the Court. On January 6, 2006, two counsel filed additional attorney appearances on behalf of Central Mfg. Co. and Stealth Industries, Inc. Robert Weiner has not filed a motion seeking leave to withdraw, nor has he appeared before this Court since early November 2005. Likewise, Leo Stoller has failed to appear at status hearings, despite having an appearance on record.

[2] The Real Time Corporate/LLC database indicates that Stealth Industries, Inc., a Delaware corporation, was registered two times as a foreign corporation doing business in Illinois. The first registration occurred in 1993 by a Chris Stoller. This registration was revoked in 1994. In 1998, Stealth Industries, Inc. again was registered with the Illinois Secretary of State, this time by Leo Stoller. This registration was revoked in January 2004. The corporation has not been reinstated. Corporation/LLC Search, http://cdsprod.ilsos.net/CorpSearchWeb/corpsrch.html.

Central Mfg. Co., have standing in this matter, and the impact of registering a foreign corporation after commencing a lawsuit in federal court in Illinois.

In their statement to this Court, Plaintiffs assert that Central Mfg. Co. was properly before this Court because the Illinois Business Corporation Act ("IBCA"), 805 Ill. Comp. Stat. 5/1.01 *et seq.*, which sets forth the requirements for registering a foreign corporation to do business in Illinois, does not constitute a jurisdictional bar to foreign corporations in Illinois courts. Instead, Plaintiffs contend that the pleadings must simply be sufficient to put the opposing party "on notice" about the identity of the plaintiff and any claims or defenses alleged. They also contend that any defects in Plaintiffs' registration reflected mere "misnomer" or "oversight," rather than an attempt to obscure plaintiffs' true identity. Finally, plaintiffs contend that because Congress derives its power to protect trademarks from the Commerce Clause of the United States Constitution, the IBCA cannot work to deny standing or capacity to sue to a foreign corporation doing business in Illinois.

Section 13.70 of the IBCA states that "[n]o foreign corporation transacting business in this State without a certificate of authority is permitted to maintain a civil action in any court of this State, until the corporation obtains a certificate of authority." 805 Ill. Comp. Stat. 5/13.70. The statute goes on to state that a foreign corporation that transacts business in Illinois without a certificate is liable for fees, taxes, penalties and other charges that would have been levied during the time it transacted business without a certificate. *Id*.

"Incapacity to sue is a defense that must be made out by the defendants." *Dixie Cotton Felt Mattress Co. v. Stearns & Foster Co.*, 185 F. 431, 434 (7th Cir. 1911). Illinois courts have permitted suits by unregistered foreign corporations transacting business in Illinois on the

grounds that if the corporation obtain a certificate of authority, it could proceed with the suit. *Emcee Corp. v. George*, 12 N.E.2d 333, 335 (Ill. App. Ct. 1938); *see also Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.*, 371 F.2d 251 (7th Cir. 1966). If, however, a company only engages in isolated transactions, then it is not doing business in Illinois within the meaning of the statute and accordingly, is not required to register. *Wirth Ltd. v. Silvretta*, 575 F. Supp. 1274, 1276 (N.D. Ill. 1984) (citing *Charter Fin. Co. v. Henderson*, 326 N.E.2d 372, 326-27 (Ill. 1975)). In addition, where a foreign corporation can demonstrate that it is engaged in interstate commerce in Illinois, it is not required to obtain a certificate of authority and may bring an action in an Illinois court. *See, e.g., Subway Rests., Inc. v. Riggs,* 696 N.E.2d 733, 737 (Ill. App. Ct. 1998); *Mass Transfer Inc. v. Vincent Constr. Co.*, 585 N.E.2d 1286, 1289-90 (Ill. App. Ct. 1992); *Buckingham Corp. v. Modern Liquors, Inc.*, 306 N.E.2d 650, 652 (Ill. App. Ct. 1973).

Incapacity to sue would affect only plaintiffs' ability to bring a claim under Illinois law. *See Kansas Quality Constr., Inc. v. Chiasson*, 250 N.E.2d 785, 788 (Ill. App. Ct. 1969) ("an out of state corporation with an Illinois based cause of action can't sue until it has a certificate"). Thus, in the instant case, it would only affect Plaintiffs' Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*, claim. However, defendants did not raise incapacity as a defense to the amended complaint. Moreover, Stoller did register Central Mfg. Inc. and its assumed name, Central Mfg. Co. of Illinois, with the Illinois Secretary of State during the pendency of this litigation. This Court, therefore, finds that Central Mfg. Co. of Illinois has standing to bring this motion for reconsideration.

**Standard of Review**

A motion for reconsideration does not exist as such under the Federal Rules of Civil Procedure. Rather, Plaintiffs have filed a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e). A court may grant a motion to amend a judgment in three circumstances: 1) there is newly discovered evidence; 2) there has been an intervening change in the law; or 3) the judgment reflects a manifest error in the law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent" on the part of the court. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Such situations rarely occur, however, and the motion to reconsider should likewise be rare. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983)).

**Discussion**[3]

At the outset, this Court notes that in light of the ongoing bankruptcy proceedings, this case is automatically stayed as to Plaintiff Leo Stoller. 11 U.S.C. § 362(a)(1). The following discussion applies to Plaintiffs Central Mfg. Co. and Stealth Industries, Inc. only.

Plaintiffs first assert that the Court erred in finding that Plaintiffs abandoned their use of the mark "Stealth" for baseballs and cancelling Plaintiffs' trademark. But Plaintiffs misapprehend the basis for the trademark cancellation. This Court based the cancellation on a finding that there was no likelihood of confusion between Defendants' and Plaintiffs' products. Further, this Court stated that the record showed that Brett Bros. was the senior user of the mark

---

[3] This Court assumes familiarity with the facts of this case and will not repeat them here.

"Stealth" on baseball bats, and that the '249 Registration covered goods identical to those manufactured and sold by Defendants.[4] In addition, Plaintiffs' trademark application (which subsequently was registered as the '249 Registration) listed a date of first use of "Stealth" on baseball bats of January 3, 2001. The record, however, established that Brett Bros. first used the mark on baseball bats in 1999, two years earlier. Thus, this Court found Defendants were the senior users of the "Stealth" mark on baseball bats and cancelled Plaintiffs' '249 Registration.

In their second argument in support of reconsideration, Plaintiffs contend that Defendants have not established any trademark rights in "Stealth" because they used it only as a model designation and thus had no prior user rights to the mark for baseballs and baseball bats. Further, Plaintiffs assert that Defendants did not provide any proper evidence of use of the "Stealth" mark prior to Plaintiffs' '249 Registration. Specifically, Plaintiffs contend that the court improperly relied on invoices as evidence of use of the mark in commerce, when it should have instead relied on Plaintiffs' portfolio of "33 STEALTH federal trademark registrations," packaging labels, and the "very expensive four color catalog" from Easton Sports, Plaintiffs' alleged licensee as proof that Plaintiffs, and not Defendants, used the "Stealth" mark in connection with

---

[4] Plaintiffs now produce a print-out of a website called Be A Better Hitter (http://www.beabetterhitter.com), which they allege shows that Defendants' and Plaintiffs' allegedly-licensed products were sold by the same retailer, and thereby causing confusion to consumers. This is insufficient. Plaintiffs offer no explanation for its failure to produce this material during the summary judgment stage of the proceedings. There is nothing about the website material that Plaintiffs submit that indicates that this is a new website or that it has sold any of the products in question. The purpose of a motion to alter or amend judgment is to correct errors in fact or law, not to provide a second chance to a party who failed to search diligently for information (readily-available, in this instance) at the appropriate time. This lack of diligence and respect for the Court's resources is of a piece with Plaintiffs' actions throughout this litigation.

baseball bats. But this argument selectively mischaracterizes this Court's summary judgment opinion.

In fact, this Court found that Defendants established prior use of the "Stealth" mark through declarations from its corporate vice president, detailing the development of the "Stealth" mark and its use on Brett Bros. baseball bats; declarations from individuals involved in the sporting goods industry, specifically the baseball goods market, which stated that Defendants' products are well-known and Plaintiffs' products unknown in the industry;[5] authenticated invoices from 1999 and 2000; authenticated price lists for Defendants' Stealth baseball bat; authenticated advertising and website material, showing that Defendants sell the Stealth baseball bat via the internet and retailers nationwide; and correspondence from a college baseball coach, describing actual use of Defendants' Stealth baseball bat with his college team.

With respect to the deposition of Defendants' vice president, Plaintiffs contend that Defendants admit that Defendants used "Stealth" as "merely" a model designation. Defendants disagree in cursory fashion. This Court notes that it analyzed the use of the mark on Defendants' products and on the Easton products Plaintiffs contend were produced under a license agreement between Easton and Central Mfg. Co.'s service mark, Rentamark.com. Plaintiffs cite a decision from the Trademark Trial and Appeals Board to the effect that "[i]t is well settled that terms used merely as model, style or grade designations are not registrable as trademarks because they do

---

[5] Plaintiffs' argument that the Hostetler, Nolan and Rice declarations admit that Plaintiffs' alleged licensee used the "Stealth" mark on baseball bats fails. The declarations clearly state that Defendants were the only producer in the baseball and sporting goods industry using the "Stealth" mark until 2004. This shows only that Easton began marketing Stealth model baseball bats in 2004. It does not demonstrate, without additional evidence which is not found in the record, that *Plaintiffs* used the mark on goods in commerce.

not serve to identify and distinguish one party's goods from similar goods manufactured and/or sold by others." *In re Dana Corp.*, 12 U.S.P.Q.2d 1748, 1749 (TTAB 1989). This citation is inapposite, however, because it deals with the issue of whether a descriptive term may be registered as a mark. Defendants do not argue that they sought to register "Stealth" as a trademark. Indeed, Plaintiffs argument serves to raise further questions about the validity of the '249 Registration. The TTAB went on to note, however, that "[i]f ... it is shown that the designation in question has attained recognition by the public as a source identifier in addition to any other function it may perform, then it may be registrable as a trademark." *Id.* Defendants provided evidence at the summary judgment stage of proceedings that their use of the mark was widely recognized by the public.

Lastly, Plaintiffs argue that the Court committed "clear error and abuse of discretion" when it found that Plaintiffs' suit was exceptional and harassment and awarded attorneys' fees and costs to Defendants. Courts have discretion to award fees to prevailing parties in "exceptional" cases under the Lanham Act, 15 U.S.C. § 1117(a). Courts also have authorization to award attorneys' fees under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/10a(c). A case is "exceptional" when it was so lacking in merit and so burdensome to defend against that it could fairly be described as oppressive. *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1032 (7th Cir. 1997). Here, Plaintiffs' claim that Defendants infringed their trademark lacked merit from the outset. Plaintiffs did not register a trademark for baseball bats until October 2004. "[N]o rights are conferred by the mere filing of a federal trademark application and the applicant is entitled to no statutory presumption of entitlement until the registration issues." *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*,

811 F.2d 1470, 1472 (Fed. Cir. 1987). Notwithstanding the fact that their trademark application had not matured into the '249 Registration, Plaintiffs filed the instant suit in April 2004.

In addition, Plaintiffs failed to respond to repeated discovery requests until Defendants filed a motion to compel. Plaintiffs subsequently forced Defendants to defend against Plaintiffs' unfounded motion to compel, which Judge Mason summarily denied. *Central Mfg. Co. v. Brett*, No. 04 C 3049, mem. op. (N.D. Ill. July 5, 2005). As this Court noted in its summary judgment opinion, Plaintiffs offered "irrelevant, questionable, and seemingly fantastical documents" in support of their claims; gave inconsistent and contradictory testimony; provided a "cascade" of unauthenticated so-called licensing agreements revealing an enormous range in "licensing fees" (from $10 to $25,000) suggestive of harassment; failed to produce evidence of even one sale; repeatedly attempted to misdirect the Court's attention to registrations totally unrelated to Defendants' products; and filed the instant suit before acquiring a federal trademark registration for baseball bats. Plaintiffs' conduct rises to the level of "oppressive" and "exceptional." The fact that other courts, deciding different cases, did not deem Plaintiffs to be "bad actors" does not prevent this Court from awarding fees to Defendants based on Plaintiffs actions in *this* case. The award of attorneys' fees and costs is affirmed.

**Conclusion**

For the foregoing reasons, Plaintiffs have failed to establish that this Court committed a manifest error of law that would support a Rule 59(e) motion to alter or amend a judgment. Plaintiffs' motion is DENIED at to Central Mfg. Co. and Stealth Industries, Inc.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 15, 2006**